UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

In re

**GLENN DAVID RYCH**,

Debtor.

Case No. **22-20240-BPH**

**MEMORANDUM OF DECISION**

**I.    Introduction**

In this Chapter 13 case,[1] debtor Glenn David Rych ("Debtor") received a personal injury settlement of $77,000. Both the injury and settlement occurred after his Chapter 13 plan was confirmed. The Chapter 13 Trustee ("Trustee") moved to modify the confirmed plan and demanded turnover of the settlement proceeds.[2] Debtor objected. Debtor explained in his objection that his confirmed plan already provided for full payment of all claims. Prior to the hearing on the objection, the parties submitted an Agreed Order that resolved the objection and required Debtor to turnover the $77,000.[3] Shortly after the Agreed Order was entered, this Court questioned the relief requested, and the grounds for the relief. Scrutiny of the Trustee's motion failed to address the Court's concerns.

While this Court encourages parties to resolve their own disputes when it is possible to do so, this Court "is not a potted plant." *United States v. Gomez*, 1989 U.S. App. LEXIS 23678, at *16 (9th Cir. Nov. 20, 1989). To afford the Trustee an opportunity to explain her position and identify any authority supporting the relief sought and the Agreed Order, this Court entered an Order to Show Cause, "why the Agreed Order shall not be vacated."[4] Prior to the hearing, Trustee filed a "Brief in Response to Court's Show Cause Order and in Support of Trustee's

---

[1] Unless otherwise indicated, all Chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532 and all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

[2] Doc. 81 ("Motion").

[3] Doc. 86 ("Agreed Order").

[4] Doc. 89. The Court explained in its order to show cause, "The Agreed Order did not refer to any authority for this relief and although agreed to by the parties, events in other cases with the Trustee have caused the Court to revisit matters like the Agreed Order in this case. Having scrutinized the Agreed Order, along with the underlying pleadings, this Court questions whether the Order is substantively incorrect."

1

Motion to Modify the Confirmed Plan."[5] A hearing was held on May 9, 2025.

## II. Jurisdiction

Pursuant to 28 U.S.C. § 1334(a) and by referral from the district court,[6] bankruptcy courts enjoy original and exclusive jurisdiction of all cases under Title 11, along with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Within this framework, matters subject to bankruptcy court jurisdiction are further distinguished as core and non-core. "[M]atters concerning the administration of the estate" are core matters. 28 U.S.C. § 157(b).

## III. Relevant Facts, Procedure, and Parties' Positions

### A. The Motion, Objection, and Agreed Order

Debtor confirmed his Chapter 13 Plan on April 18, 2023 ("Plan"). Under the terms of the Plan, Debtor agreed to make payments of $5,725.00 for 60 months.[7] The Plan provided for payment of 100% of unsecured creditors' allowed claims. Further, the Plan provided that property of the estate revested in Debtor at confirmation.

The Chapter 13 trustee initially assigned to this case retired, and Trustee was assigned to it. Approximately 90 days after her appointment, Trustee filed the Motion, which included the following allegations and contentions:

1. The Trustee has been advised that the Debtor is the party to a lawsuit . . . as a result of personal injuries he received as a result of being struck by an automobile on or about October 24, 2024;

2. It is the Trustee's contention that this "cause of action" constitutes both disposable income and is an asset of the Debtor's Chapter 13 estate;

3. These proceeds are due to be paid to the Trustee for the benefit of unsecured creditors;

4. Trustee moves that all other provisions of the confirmed plan as previously modified remain unchanged; and,

5. In the alternative Trustee requests an order that Debtor not be permitted to modify his plan at a later date to not pay unsecured creditors in full.

---

[5] Doc. 91 ("Brief").

[6] D. Idaho General Order No. 349.

[7] Doc. 2.

Debtor objected to the Motion.[8]

Debtor's Objection presented a series of cogent arguments. First, Debtor noted that the Trustee's characterization of the personal injury settlement as "disposable income," is incorrect. Next, Debtor argued that whether the cause of action and its proceeds were property of the estate was less clear than Trustee contended because the Plan already provides for full payment of all claims, and property revested in the Debtor at confirmation.

Finally, Debtor noted there is nothing in the Code that explicitly authorizes a preemptive prohibition on future modifications of a Chapter 13 plan by the debtor after confirmation. He contends that the Trustee's attempt to prospectively limit a right explicitly provided for under the Code should be denied. Consistent with the applicable local rules, a hearing on the Objection was scheduled. However, six days before the hearing, the parties submitted the Agreed Order modifying the Plan to require turnover of $77,000 and vacating the hearing. The Court entered the parties' Agreed Order. Ten days later, the Court entered its order to show cause why the Agreed Order should not be vacated.

### B. Cause to review the Agreed Order

Following entry of the Agreed Order in this case, this Court held a hearing in a separate matter involving the same Trustee to assess whether the Trustee should be sanctioned pursuant to Fed. R. Bankr. P. 9011.[9] Specifically, this Court sought to assess whether the Trustee's legal contentions were warranted under existing law. The Trustee was directed to furnish this Court with specific legal authority that supported her position prior to the hearing. Rather than do so, the Trustee conceded, "Trustee has been unable to locate the specific authority sought by the Court."[10]

At the sanctions hearing in *Fullmer*, the Trustee conceded that prior to filing her request for relief, she had not reviewed the authority cited in her papers.[11] Trustee further conceded she could not identify any authority for her position after being directed to do so by the Court. Strangely, despite these concessions, the Trustee was strident in her remarks to the Court. Rather than sanction the Trustee or her counsel for taking a position unwarranted by existing law, the Court tried to impress upon both its expectations.[12]

Following the hearing, this Court remained disturbed by the Trustee's cavalier approach

---

[8] Doc. 84.

[9] *In re Anna Fullmer*, Case No. 21-20215-BPH ("*Fullmer*"), Doc. 118.

[10] *Fullmer* Docs. 111 and 116.

[11] Hearing occurred in *Fullmer* Doc. 123.

[12] *Fullmer* Doc. 124.

3

to the law. It caused this Court to revisit other recent filings by the Trustee in other matters, including the Agreed Order in this case. Based on its review of the Agreed Order, this Court set an Order to Show Cause because this Court questioned the Trustee's alleged grounds for relief under 11 U.S.C. § 1329. Once again, it appeared to the Court that the Trustee had taken a position unwarranted by existing law.

### C.  Chapter 13 Trustee's Response to Order to Show Cause

In response to this Court's Order to Show Cause, the Trustee urges this Court to ignore controlling law in this circuit and construe the Code in a manner that frustrates rather than furthers its purpose. Despite prior recognition in this Circuit that *In re Jones* recognized the estate termination approach,[13] Trustee contends the postconfirmation personal injury settlement is an estate asset available for additional plan funding even though the Plan is already fully funded and pays 100% of allowed unsecured claims.

Additionally, Trustee characterizes the one-time postconfirmation personal injury settlement as increased disposable income, arguing, "[o]ther courts have not permitted post-confirmation plan modifications where debtor was not meeting the preconfirmation disposable income requirement as set forth in § 1325(b) based on the contention that § 1329(a) implicitly incorporates § 1325(b)." This argument fails to mention or consider *Sunahara v. Burchard (In re Sunahara)*, 326 B.R. 768 (BAP 9th Cir. 2005), which explicitly held that § 1325(b)(1)(B)'s disposable income requirement does not apply to plan modifications under § 1329.

### IV.   Applicable Law and Analysis

This Court erred when it entered the Agreed Order. The Trustee's insistence that Debtor turnover the $77,000 attributable to a postconfirmation personal injury and settlement under the guise of plan modification was unsupported by existing law. Her response to the Order to Show Cause has failed to persuade the Court there is a basis for the relief requested. At best, it reflects a misguided effort by the Trustee, at odds with both the text and purpose of the Code. To contextualize the Trustee's arguments, revisiting basic principles is instructive and ultimately guides the Court's analysis.

### A.  Authority to Review the Agreed Order

Courts have recognized, "a court has complete discretion to amend its own orders to prevent a manifest error of law." *Lowe v. Jay (In re Jay–Reyna Homes & Constr., Inc.)*, 387 B.R. 716 (Bankr. W.D. Tex. 2008); *Bateman v. Donovan*, 131 F.2d 759, 764 (9th Cir. 1942); *Burnam v. Amoco Container Co.*, 738 F.2d 1230, 1232 (11th Cir. 1984) (court may act sua sponte under Fed. R. Civ. P. 59(e) within period specified by Fed. R. Civ. P. 59(e) for making motion); 12 *Moore's Federal Practice* ¶ 59.33 (3d ed. 2025). Only ten days passed between entry of the Agreed Order and the Order to show cause why it should not be vacated.

---

[13] *Cal. Franchise Tax Bd. v. Kendall (In re Jones)*, 657 F.3d 921 (9th Cir. 2011).

4

### B. Purpose of the Bankruptcy Code

The Bankruptcy Code is animated by two fundamental policies: (1) the centralization of disputes and proceedings, and (2) a fresh start for the honest but unfortunate debtor. *See Harbor Insur. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011, 1022 (9th Cir. 2012); *Cooper v. SSA*, 131 F.4th 995, 1001 (9th Cir. 2025) (citing *Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007)). The U.S. Supreme Court has routinely acknowledged that the fresh start is a central purpose of the Code, allowing debtors to "reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)).

Bankruptcy does not merely benefit the debtor, but also their creditors. Without the procedures outlined by the Code, collection efforts become a "race to the courthouse" to dismember the debtor. As the Ninth Circuit has explained:

> Bankruptcy law accomplishes equitable distribution through a distinctive form of collective proceeding. This is a unique contribution of the Bankruptcy Code that makes bankruptcy different from a collection of actions by individual creditors. In a world of individual actions, each creditor knows that if he waits too long, the debtor's assets will have been exhausted by the demands of the quicker creditors, and he will recover nothing. The creditors race to the courthouse, all demanding immediate payment of their entire debt. Like piranhas, they make short work of the debtor, who might have survived to pay off more of his debts with a little bit of reorganization—or at least might have more equitably fed the slower piranhas. Federal bankruptcy law seeks to avoid this scenario by creating a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike.

*Sherwood Partners, Inc. v. Lycos, Inc.* 394 F.3d 1198, 1203 (9th Cir. 2005) (internal citations omitted). Bankruptcy provides a process that "strikes a balance between a debtor's interest in reorganizing and restructuring its debts and the creditors' interest in maximizing the value of the bankruptcy estate." *Fla. Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 51 (2008).

### C. Goals of Chapter 13

Confirmation of a Chapter 13 plan acts as a final "sale" of prepetition assets to the debtor in exchange for their disposable income, allowing the debtor to continue their life having consolidated their prepetition dealings into one governing transaction. *Bullard v. Blue Hills Bank,* 575 U.S. 496, 502 (2015) (noting finality of confirmation order); *McDonald v. Burgie (In re Burgie)*, 239 B.R. 406, 410 (BAP 9th Cir. 1999) (discussing the Chapter 13 bargain);[14] David

---

[14] "[W]e treat the BAP's decisions as persuasive authority given its special expertise in bankruptcy issues and to promote uniformity of bankruptcy law throughout the Ninth Circuit." *State Comp. Ins. Fund v. Zamora (In re Silverman)*, 616 F.3d 1001, 1005 n.1 (9th Cir. 2010); *In*

5

Gray Carlson, *The Chapter 13 Estate and Its Discontents*, 17 Am. Bankr. Inst. L. Rev. 233, 249 (2009) (discussing the Chapter 13 bargain). Additionally, once a plan is confirmed, it binds the parties and has res judicata effect. *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 218 B.R. 916, 922–23 (BAP 9th Cir. 1998), *aff'd* 193 F.3d 1083, 1087 (9th Cir. 1999) ("the Plan is res judicata as to all issues that could have or should have been litigated at the confirmation hearing"). However, the res judicata effect afforded by plans does not preclude a debtor, trustee, or unsecured creditor from modifying a confirmed Chapter 13 plan. *Mattson v. Howe (In re Mattson)*, 468 B.R. 361, 368–69 (BAP 9th Cir. 2012).

When a Chapter 13 plan is confirmed, the plan reflects the bargain reached between a debtor and their creditors. *El v. Bronitsky (In re El)*, 2005 WL 6960183, at *3–4 (BAP 9th Cir. Dec. 23, 2005) (quoting *Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993) ("A reorganization plan resembles a consent decree and therefore, should be construed basically as a contract")). The benefit of a Chapter 13 case is that a debtor "may obtain a discharge and retain his property if he proposes, and gains court confirmation of, a plan to repay his debts over a three-to five-year period,' and then subsequently makes all payments required under the confirmed plan." *In re Strong*, 661 B.R. 638, 649 (Bankr. C.D. Cal. 2024) (citing *Harris v. Viegelahn*, 575 U.S. 510, 514 (2015)). In return, the debtor enters the "bargain inherent in chapter 13" which requires that the debtor, "for the prescribed life of the plan, run the gauntlet of exposure to trustee or creditor requests to increase payments." *Fridley v. Forsyth (In re Fridley)*, 380 B.R. 538, 544 (BAP 9th Cir. 2007).

### D. Role of a Trustee in Chapter 13

The role of a trustee is essential in Chapter 13. Trustees perform many functions, combining many disparate and important roles. *Curry v. Castillo (In re Castilo)*, 297 F.3d 940, 960–61 (9th Cir. 2002) ("the trustee is charged with many legal, adjudicative, clerical, financial, administrative, and business functions . . . ."). The trustee shall "advise, other than on legal matters, and assist the debtor in performance under the plan." § 1302(b)(4). The trustee must ensure that the debtor commences timely payments under their plan and dispose of the moneys received. § 1302(b)(3), (5).[15]

"The essential role of a Chapter 13 trustee is to review plans, advise the Court with respect to plans and act as a disbursing agent under confirmed plans." *Einoder v. Mount Greenwood Bank (In re Einoder)*, 55 B.R. 319, 323 (Bankr. N.D. Ill. 1985), *cited with approval in Cohen v. Eiler (In re Cohen)*, 305 B.R. 886, 894–95 (BAP 9th Cir. 2004). After a plan is confirmed, the trustee may seek to modify a debtor's plan to capture post confirmation increases in debtor's income. *Berkley v. Burchard (In re Berkley)*, 613 B.R. 547, 552 (BAP 9th Cir. 2020).

---

*re Del Biaggio,* 834 F.3d 1003, 1010 (9th Cir. 2016).

[15] Handbook for Chapter 13 Standing Trustee, *U.S. Dept. of Justice* (current as of Jan. 31, 2025), https://www.justice.gov/ust/private-trustee-handbooks-reference-materials/chapter-13-handbooks-reference-materials.

6

While the opinions and recommendations of a trustee are often persuasive, their decisions are not dispositive and are not entitled to any legal weight. *Kerns v. Foss (In re Chapter 13 Trustee's Motions for Declaratory Relief Challenging Constitutionality of 28 U.S.C. § 586(e) and 11 U.S.C. § 1326(b)(2))*, 666 B.R. 659, 668–69 (BAP 9th Cir. 2024). When a trustee effectively executes their role, they can successfully ferry a Chapter 13 case to completion. Conversely, when a trustee exceeds their role, they become nothing more than an "officious intermeddler"—creating a procedural morass that does nothing but bloat expenses. *In re Root*, 61 B.R. 984, 985 (Bankr. D. Colo. 1986).

### E. Modification of a Confirmed Plan

#### 1. Basis for Modification

Plans are completed over three to five years. During that period, the debtor's circumstances may change. When this occurs, the debtor, the trustee, or an unsecured creditor with an allowed claim may seek to modify the confirmed plan. § 1329(a). Modification is not confirmation. Confirmation is a watershed event which "fixes the rights and obligations of the parties" and is entitled to res judicata effect. *Bullard*, 575 U.S. at 502. Following confirmation, there is only one plan. It may be modified in narrow and statutorily prescribed ways:

(1) Increase or reduce the amount of payments on claims of a particular class provided for by the plan;
(2) Extend or reduce the time for such payments;
(3) Alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
(4) Reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor (and for any dependent of the debtor if such dependent does not otherwise have health insurance coverage)

§ 1329 (a)(1)–(4).

Some courts have determined that confirmation is such a significant event that a motion to modify must be based on a "substantial and unanticipated change" in the circumstances of the debtor. *Mattson*, 468 B.R. at 367–68 (citing *Murphy v. O'Donnell (In re Murphy)*, 474 F.3d 143, 149 (4th Cir. 2007)). The First, Fifth, and Seventh Circuits, and the Ninth Circuit BAP have rejected this approach, but the Court of Appeals for the Ninth Circuit has supported the test in dicta. *Mattson*, 468 B.R. at 368–69 (citing *Anderson v. Satterlee (In re Anderson)*, 21 F.3d 355, 358 (9th Cir. 1994) (suggesting in dicta that a trustee seeking modification would need to show "a substantial change in debtor's ability to pay")). Without the substantial and unanticipated change requirement, a proposed modified plan must still comply with § 1329(b)(1), which requires compliance with §§ 1322(a), (b), 1323(c), and 1325(a). These provisions are also requirements to confirm a plan. *See* § 1325(a)(1). Notably, it is not a requirement of a modified plan that the plan as modified dedicate all of a debtor's disposable income to plan funding. *See* §§ 1329(b)(1) and 1325(b)(1).

7

### 2. Standard for Modification

Unlike confirmation, absent an objection after notice and hearing, modification is automatic. Section 1329(b)(2) provides, "[t]he plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved." Modification does not require an order in the absence of an objection, but many courts require an order under the local rules. *Chapter 13 Practice and Procedure* § 11:5. Even absent objection, courts have an independent obligation to ensure that a plan complies with the provisions of the Code. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 (2010).

In the Ninth Circuit, "the only limits on modification are those set forth in the language of the Code itself, coupled with the bankruptcy judge's discretion and good judgment in reviewing the motion to modify." *Powers v. Savage (In re Powers)*, 202 B.R. 618, 622 (BAP 9th Cir. 1996). Generally, courts should consider the debtor's change in circumstances, particularly an increased or decreased ability to pay. *Berkley*, 613 B.R. at 551; Hon. W. Homer Drake, Jr., Hon. Paul W. Bonapfel, and Adam M. Goodman, *Chapter 13 Practice and Procedure* § 11:4 (2025). This includes consideration of any increased expenses following confirmation in conjunction with increased income. 8 *Collier on Bankruptcy* ¶ 1329.03 (16th ed. 2024).

One court has noted that judicial consideration of modification should be informed by two bankruptcy concepts: the debtor's fresh start and fairness to creditors. *In re Forte*, 341 B.R. 859, 869 (Bankr. N.D. Ill. 2005). The ability for creditors and the trustee to increase payments is not unlimited. When a motion to modify undermines the bargain and forces the debtor into liquidating assets, the fundamental purpose of Chapter 13 has been abused. David Gray Carlson, *Modified Plans of Reorganization and the Basic Chapter 13 Bargain*, 83 Am. Bankr. L. J. 585, 586 (2009).

### F. The Agreed Order is subject to being vacated because the Motion to Modify was unwarranted by existing law

Considering these guiding principles, the Court turns again to the instant case. The Trustee's Motion seeks turnover of the postconfirmation personal injury settlement to fund a plan that already pays 100% of unsecured creditors' claims. The Motion suffers from a series of problems. First, it seeks a result not contemplated by the Code—overfunding a plan without any corresponding reduction in the term of the plan. *See* §§ 1322(a)(1); 1329(a)(1), (2). In essence, Debtor will remain obligated to make all plan payments despite Trustee's receipt of an additional $77,000.

Second, Trustee mischaracterizes the postconfirmation personal injury settlement proceeds as both disposable income and property of the estate. Neither of these conclusions is supported by controlling law in this Circuit.

Finally, Trustee seeks as alternative relief a prospective bar on future plan modifications by this Debtor. In each instance, the law cited by Trustee is subject to important legal and factual distinctions that make the law inapplicable here.

8

### 1. Paying unsecured creditors 100% of allowed claims while maintaining an additional $77,000, is not contemplated by the Code

The Code does not contemplate maintenance of an economic safety net by trustees simply because the trustee harbors skepticism about future events. If a plan is a 100% payment plan, the Code is explicit that the debtor need only provide "such portion of future earnings or other income . . . as is necessary for the execution of the plan." § 1322(a)(1). Similarly, a plan may be confirmed over objection if it provides *either* full payment of projected disposable income *or* full payment of claims. § 1325(b)(1). Trustee's modification conflicts with § 1322(a)(1) by requiring Debtor to provide $77,000 more than is necessary to execute the Plan. Trustee's singular explanation for requesting this relief at the hearing was her belief that no plan is a 100% payment plan until it is completed.

Trustee's Motion explicitly states that she is requesting modification pursuant to § 1329(a)(1). She further states, "all other provisions of the confirmed plan as previously modified remain unchanged." The Motion does not seek relief under §1329(a)(2), which allows for the extension or reduction of time to make payments.

Lastly, modification to increase plan funding when a plan is already fully funded defies logic. This Court can divine no reasonable explanation for the position the Trustee has taken. Although she argues that no plan is a 100% plan until it is completed, cynicism cannot justify depriving Debtor of $77,000 pending the completion of the plan when there is no corresponding benefit to the unsecured creditors—whose claims will be paid without this additional funding source. Absent vacating the Agreed Order, Debtor would be obligated to pay more than his Plan requires with no corresponding benefit to him or his creditors.

### 2. The postconfirmation personal injury settlement proceeds are neither property of the estate nor disposable income

#### a. Trustee's reliance on the estate replenishment approach is flawed and at odds with higher authority in this Circuit

Reorganization chapters in bankruptcy include an option for revesting property of the estate in the debtor at confirmation. *See* 11 U.S.C. §§ 1141(b); 1227(b); and 1327(b). Each of these provisions state, "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." In Chapter 13 cases, courts have struggled to reconcile the language of § 1327(b) with § 1306(a). Courts have developed no less than five different approaches that seek to resolve this tension for postconfirmation administration. These five approaches include: Estate Termination; Estate Transformation; Estate Replenishment; Estate Preservation; and Conditional Vesting.[16]

Trustee relies on *In re Jackson*, 403 B.R. 95 (Bankr. D. Idaho 2009) for the proposition

---

[16] For an overview of each approach, See Robert G. Drummond, *Post-Confirmation Jurisdiction in Chapter 13: Is Vesting an Issue?*, 43 ABI Journal No. 9 (2024).

9

that Debtor's cause of action attributable to the personal injury he suffered more than six months after his plan was confirmed is property of the estate. She argues that the estate replenishment approach is controlling in this case. Under that approach, preconfirmation property of the estate revests in debtor at confirmation and postconfirmation property acquired by debtor vests in the estate. The analysis in *In re Jackson* relied on decisions outside this Circuit, including *Barbosa v. Soloman*, 235 F.3d 31, 35 (1st Cir. 2000).

Subsequent decisions in this Circuit demonstrate the Trustee's reliance on *Jackson* is misplaced. While *Jackson* included a relevant discussion of the law when it was issued in 2009, it is no longer relevant because of intervening changes in the law. In this circuit, the state replenishment approach has not been adopted. Two years after *Jackson*, the estate termination approach was endorsed in this Circuit. *Jones*, 657 F.3d at 928 ("Because Jones did not elect otherwise, she once again became the owner of her property at confirmation, except as to those sums specifically dedicated to fulfillment of the plan"). More recent decisions recognize the estate termination approach was adopted in *Jones*. *See e.g., Black v. Leavitt (In re Black)*, 609 B.R. 518, 529 (BAP 9th Cir. 2019) (reading *Jones* to stand for adoption of estate termination approach); *Berkley*, 613 B.R. at 552–53.

As its name suggests, under this approach the estate terminates at confirmation when all estate property revests in the debtor, unless the plan or confirmation order provides otherwise.[17] The *Jones* court reasoned that the estate termination approach gave effect to the choice afforded debtor under § 1327(b). Under that statute, property of the estate may revest in debtor, remain property of the estate, or both (i.e., specific property revests in debtor, while other specific property remains property of the estate). *Jones*, 657 F.3d at 929. It explained that § 1306 provided the latest date at which property of the debtor would no longer be property of the estate, and that date corresponded to case closure, dismissal, or conversion. *Id.* In essence, under *Jones*, property of the estate revests in the debtor upon the sooner of confirmation or case closure, dismissal, or conversion, subject to the plan and confirmation order. Here, the plan provided that property revested in debtor at confirmation. As a result, the entire estate was terminated.

### b. Trustee's analysis of the disposable income issue is incomplete and misstates the law

Postconfirmation personal injury settlement proceeds are not disposable income under the applicable test in this Circuit. *Burgie*, 239 B.R. at 410–11 ("Only regular income and substitutes therefor can be counted in the determination of disposable income for the purposes of the chapter 13 test"). Disposable income is defined by the Code as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended." § 1325(b)(2). Trustee does not present a convincing case that the settlement proceeds are "monthly income." Explicit in the Code's definition of income is a requirement of regularity. *See* § 101(10A)(B)(i) ("includes any amount paid . . . on a regular basis"). This is especially clear under § 1325(b)(1) where the word "projected" is included in the requirement. It would be difficult to project income if it included sporadic one-time payments. *Pak v. eCast Settlement Corp. (In re Pak)*, 378 B.R. 257, 264 (BAP 9th Cir. 2007) ("The term 'projected' is essentially forward-looking. It means 'to calculate,

---

[17] *Id.*

10

estimate or predict . . . based on present data or trends'") (quoting *In re Jass*, 340 B.R. 411, 415 (Bankr. D. Utah 2006)). There is no basis to conclude the one-time personal injury settlement Debtor received in this case constitutes disposable income.

      Even, assuming *arguendo*, that the postconfirmation personal injury settlement proceeds are disposable income as the Trustee contends, in this Circuit, § 1325(b)'s disposable income requirement for confirmation does not apply to modifications under § 1329. *See Sunahara*, 326 B.R. at 781 ("Simply put, the plain language of § 1329(b) does not mandate satisfaction of the disposable income test of 1325(b)(1)(B) with respect to modified plans"). Full payment or contribution of all disposable income is not required to approve modification. *See* § 1329(b)(1). Courts should not read an additional restriction into the statute where none exists. *Lamie v. U.S. Trustee*, 540 U.S. 526, 538 (2004) ("There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted") (quoting *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978)); Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012) (describing the Omitted-Case Cannon). Interpreting the Code in the manner urged by Trustee finds no support in the text or purpose of the relevant statutes.

      While the Trustee refers to a number of past cases in this district where she has successfully acquired postconfirmation assets of a debtor through turnover, her reliance on these cases is misplaced because none of the cases involved a 100% payment plan.[18] When questioned at the hearing, Trustee conceded that in each prior case where modification, turnover, and increased plan funding occurred, the confirmed plan did not provide for full payment of allowed unsecured claims. This distinction is significant and utterly ignored by the Trustee. Further, the availability of postconfirmation assets to fund a confirmed plan is very much a live question under the estate termination approach. *See* Keith M. Lundin, *Lundin on Chapter 13*, § 122.2, at ¶ 2. Under the circumstances in this case, no basis exists for the Trustee to demand turnover of the postconfirmation asset for purposes of plan funding and modification of the plan.

---

[18] *In In re Jackson*, 04-40542-JDP, the recovery was pursuant to a stipulation to prevent Trustee from pursuing real property (Doc. 221); *In re Shew*, 08-02032-TLM, the recovery was pursuant to a stipulation that protected the debtors' bonuses from a previous motion to modify (additionally Trustee made much of the fact that it was not a 100% payment plan) (Doc. 75); *In re Bianchi*, 12-02210-JMM, modification made to recover inheritance payment in plan paying less than 100%; In re *Rowe-Bausman*, 15-00465-JMM, payment of half of injury recovery pursuant to compromise after debtor suffered lost wages more than double the recovery (Doc. 82 and 89); *In re Vasquez*, 18-00808, payment of half of recovery pursuant to compromise (Doc, 40); *In re Geary*, 21-0071, payment of half of injury recovery pursuant to compromise in less than 100% payment plan (Doc. 73), additionally, debtors later modified their plan to reduce monthly payments to less than half the original amount (Doc. 78). None of the cases Trustee referred to by Trustee stand for the proposition that turnover and modification is appropriate to produce excess plan funding.

### 3. Trustee's dubious request for a prospective unconditional bar on modification

In the Brief, Trustee argues, as an alternative to modification, this Court may bar Debtor from modifying the Plan to reduce his plan payments in the future. Trustee has not pointed to any statutory authority to support this proposition. Instead, she directs the Court to three cases where under unique facts, courts fashioned unique relief.

First, Trustee cites *In re McCarthy*, 554 B.R. 388 (Bankr. W.D. Tex. 2016) for the proposition that the Court can condition confirmation on 100% payment. As this Court explained above, confirmation is a fundamentally different event than modification. In *McCarthy*, the debtor had the ability at confirmation to pay 100% of claims over 37 months but chose to propose and confirm a 60-month plan. *Id.* at 390–91. Ultimately, the *McCarthy* court gave the debtor a choice to propose a plan with a shorter payment term or confirm the plan as proposed with an understanding that a prospective modification would not be entertained. *Id.* at 395.

The *McCarthy* court concluded that "[i]t is not bad faith to pay claims over a period of 60 months when there is excess disposable income to pay them sooner." 554 B.R. at 394. However, if the debtor elected to pay the claims over 60 months, future modifications would not be considered by the court. *McCarthy* neither expressly supports Trustee's contentions, nor justifies prospectively barring this Debtor from future modifications. Further, this case involves modification not confirmation, and the disposable income test is not a component of modification. § 1329(b)(1).

Trustee next relies on yet another out-of-Circuit case, *In re Halwachs*, 660 B.R. 676 (Bankr. S.D. Ill. 2024). The court in that case held that the disposable income test applies to post-confirmation modification. *Id.* at 682. As discussed above, this expressly conflicts with *Sunahara*, 362 B.R. at 781.

Trustee's last case, while in-Circuit, relies on facts completely distinct from the case at hand. Once again, Trustee presents the case in a cursory fashion and fails to acknowledge or explain the factual distinctions that make her reliance on it questionable at best. In *In re Goethals*, the debtors confirmed a plan and then missed payments for 12 months. 2023 WL 2730561, at *1 (Bankr. S.D. Cal. Mar. 30, 2023). The primary issue in that case—and the reason for the discussion of disposable income and reducing plan payments—is that the debtors attempted to address a plan default by further reducing their obligations that were fixed at confirmation rather than seeking to cure. *Id.* at 4–7. *Goethals*, like the other cases, lend only superficial support to Trustee's position. Scrutiny of the cases shows the cases are inapplicable here.

V.  **The Agreed Order shall be vacated**

The Agreed Order must be vacated because it is premised on a manifest error of law that must be corrected. The relief requested in the underlying Motion had neither a legal nor factual basis. This Court does not reach this conclusion easily because it invites speculation about the Trustee's competence and motivations. Rather than speculate, this Court simply concludes it

cannot identify any authority for compelling a debtor to turnover $77,000 in additional excess plan funding pursuant to § 1329(a)(1), when the Plan subject to modification already achieves the best possible result in bankruptcy—payment of allowed unsecured claims in full.

If at any point the Trustee had explained the relief sought was pursuant to § 1329(a)(2), the result may be different. If increased plan funding attributable to turnover of $77,000 correspondingly reduced the time necessary to make payments required under the Plan, the analysis would be different. Indeed, if that had occurred the Debtor may not have objected to the Motion. He might have concluded that turnover and reduction of the time to make payments was beneficial. Instead, Trustee explained in her Motion "that all other provisions of the confirmed plan as previously modified remain unchanged." And her singular explanation for this relief was, no plan is a 100% plan until it is completed. Trustee's concern that Debtor may prospectively fail to complete his Plan payments is insufficient to require turnover of postconfirmation property in excess of the amount needed to fund the Plan now. There is simply no legal authority that permits this Court to authorize the relief requested under the circumstances here.

### VI. Conclusion

Trustee has advanced legal arguments that have no support—and no compelling practical reasons—to force Debtor to turnover the entirety of his postconfirmation personal injury settlement to the Trustee. It suggests Trustee has grown accustomed to making demands of debtors with the expectation that the debtor will acquiesce, and the Court will not question the parties' stipulations. If this was a single occurrence, the Court would still question it but likely give it far less attention than it has here. However, it does not appear this is an isolated incident.

To date, this Court has entered orders to show cause or has set a hearing on no less than three occasions to question the Trustee regarding her legal positions.[19] In each instance, this Court expected the Trustee to present it with authority or some other rational explanation for the position being asserted. Instead, on one occasion she conceded that she was unable to locate any authority to support her position.[20] In another instance, her counsel conceded certain positions lacked legal support, while in other instances he vaguely argued that the position had a colorable basis.[21]

In this case, Trustee conceded she was unable to find a case where a plan that paid 100% of allowed unsecured claims was modified to further increase plan funding. Rather than concede the relief she sought was unsupported by existing law, her response to the Order to Show Cause seemingly assumed the Court would not read the cases or other authority cited because nothing in the submission lends support to the positions the Trustee has asserted. Trustee's decision to file this Motion cannot be reconciled with either her duties as a Trustee, the broad purposes of

---

[19] *See* the above-captioned case, *Fullmer*, and *In re Asmus*, 24-20430-BPH at Doc. 62.

[20] *Fullmer,* Doc. 116.

[21] *Asmus,* Doc. 67.

bankruptcy, or the goals of Chapter 13.

More troubling, however, is the costs associated with the positions the Trustee has taken. At the hearing, Debtor suggested that the cost of litigating with the Trustee weighed heavily in favor of acquiescence and entry of the Agreed Order. For debtors on the receiving end of a demand that enjoys limited or no legal support, the choice between acquiescence and incurring fees to resist a demand or motion may be no choice at all. If this accurately reflects the dynamic that exists, neither the goals of bankruptcy nor the Chapter 13 bargain is furthered or achieved by this approach. If such a dynamic exists, it must be discontinued in favor of one that realizes the Chapter 13 bargain and the overarching purposes of bankruptcy. Despite Debtor's agreement to entry of the Agreed Order, entry of it by this Court was in error for the reasons explained above. Having realized the error, the Agreed Order must be vacated. A separate order will be entered.

DATED: September 24, 2025

HON. BENJAMIN P. HURSH
U. S. BANKRUPTCY JUDGE
SITTING BY DESIGNATION
U.S. COURTS, DISTRICT OF IDAHO